UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE GUADALUPE BEALL,<br><br>Defendant. | 4:15-CR-40080-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Jose Guadalupe Beall, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 165. Plaintiff, the United States of America, opposes the motion. Docket 176. For the following reasons, the defendant's motion for compassionate release is denied.

## BACKGROUND

On July 8, 2016, Beall pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 72, 78. On September 21, 2016, the court sentenced Beall to 240 months in custody followed by 10 years of supervised release. Docket 113 at 2; Docket 114 at 2-3. His sentence was later reduced to 120 months in custody. Docket 160 at 2. His projected date of release is January 31, 2024. *See Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 19, 2022).

Beall is incarcerated at FCI Allenwood Low, a low security federal correctional institution. *See id.; FCI Allenwood Low*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/alf/ (last visited Apr. 22, 2022).

The total population at FCI Allenwood Low is 955 persons. *See FCI Allenwood Low.*

Beall is 65 years old. *See Find an Inmate.* In support of his motion, Beall cites his age, medical conditions, the COVID-19 pandemic, and his mother's chronic medical conditions as circumstances that warrant release from custody under the First Step Act. Docket 165. Beall submitted an Inmate Request to Staff form to the warden of FCI Allenwood Low on January 18, 2022, requesting he be placed on home confinement due to extraordinary and compelling reasons. Docket 172 at 1. The warden denied his request on February 4, 2022. Docket 175-1. Beall filed a pro se motion seeking compassionate release under the First Step Act on January 10, 2022. Docket 165. On February 24, 2022, the federal public defender's office filed a supplement in support of Beall's motion for compassionate release. Docket 175.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early.

18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2021). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Beall argues that the global COVID-19 pandemic, his health conditions, his age, his family circumstances, and the current conditions of FCI Allenwood Low satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 165; Docket 175 at 7, 10-17. He asks for a sentence of time served and a period of home confinement as a condition of supervised release. Docket 175 at 2.

I. **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

3

such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A).

On January 18, 2022, Beall submitted an Inmate Request to Staff form requesting compassionate release due to his age, medical conditions, the COVID-19 pandemic, and his mother's chronic medical conditions. Docket 172 at 1. On February 4, 2022, the warden denied his request. Docket 175-1. Having presented his request to the warden and being denied, and hearing no objection from the United States, the court will presume Beall has satisfied the administrative exhaustion requirement and will review the matter on the merits.[1]

## II. Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, deterioration of one's physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all

---

[1] The warden's response states that Beall has the right to appeal through the administrative remedy process. Docket 175-1. There is no indication that Beall appealed the decision administratively.

category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Beall contends the global COVID-19 pandemic, his age, health conditions, and family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 165; Docket 175 at 7, 10-17. Therefore, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the age category, USSG § 1B1.13 Note 1(B), the family circumstances category, USSG § 1B1.13 Note 1(C), and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Beall has failed to show that his reasons for release rise to the level of

"extraordinary and compelling" circumstances justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(i)(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html . The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or

Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records in this case. Beall suffers from esophageal reflex, a prior latent tuberculosis infection, a calcified granuloma located on his lung, hyperlipidemia, hypertension, cervical spondylosis, and a history of hepatitis B and hepatitis C. Docket 172 at 33, 81. As of December 6, 2021, Beall is prescribed aspirin and atorvastatin for his hyperlipidemia, hydrochlorothiazide and lisinopril for hypertension, and omeprazole for his esophageal reflux. *Id.* at 2-3. He is currently not prescribed medication for the following conditions: tuberculosis infection, calcified granuloma, hepatitis B, hepatitis C, and cervical spondylosis. *See id.*

Beall's medical records reflect a positive PPD test at 21 mm[2]. Beall's last tuberculosis clearance chest x-ray showed a negative result, and a follow-up was not recommended. *Id.* at 78. Beall has produced similar results in the

---

[2] A result of 15 mm or more is considered a positive result for tuberculosis. *See PPD Skin Test*, Nat'l Libr. of Med. (Jan. 24, 2022), https://www.ncbi.nlm.nih.gov/books/NBK556037/ .

7

past. *Id.* at 69, 72, 75. Additionally, his records show his calcified granuloma has been monitored. Docket 167 at 175, 358, 495. On February 18, 2021, Beall received a chest examination due to his history of tuberculosis and hypertension. Docket 172 at 139. The results showed a "[s]table 4 mm calcified granuloma right upper lobe. Remaining lungs are clear. No pleural effusions. Bony elements are within normal limits for age. No acute osseous abnormality." *Id.* His results were compared to his last examination in 2019, and no concerns were noted. *Id.*

Beall does have a history of hepatitis B and hepatitis C. *Id.* at 33. Beall completed his treatment for hepatitis C and was not prescribed medication due to his liver being in good condition. *Id.* His medical records show Beall has been attending the chronic care clinic since being diagnosed with Hepatitis B. Docket 167 at 167, 503. Additionally, Beall's cervical spondylosis is monitored by his physician. *Id.* at 167-169, 180-181. An MRI found cervical spine disk protrusions and spurs on his cervical spine. *Id.* at 180-181, 488. His medical provider recommended exhausting medical therapies and following up with his provider as needed. *Id.* at 181, 352, 408. Beall also suffered from neck pain because of his condition. Docket 172 at 16, 51. After being examined, he was prescribed ibuprofen for the pain and an x-ray was ordered. *Id.* at 16. The x-ray showed "mild osteoarthritis acromioclavicular and inferior glenonumeral joint." *Id.* at 134. It is unclear whether Beall's conditions have improved, however, he denied feeling pain specific to his condition and his ibuprofen medication was not renewed. *Id.* at 2.

The court has required a more particularized showing of a risk of serious

illness from COVID-19 when evaluating compassionate release motions. After reviewing Beall's medical records, the court is not convinced that Beall's health conditions prevent him from providing self-care in a correctional facility setting, nor does the court believe his medical conditions amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 21, 2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See id.* Since March 26, 2020, 41,109 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

The court believes Beall's medical conditions are appropriately managed at FCI Allenwood Low, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that FCI Allenwood Low had a COVID-19 outbreak does not negate such conclusions. The data for FCI Allenwood Low shows a COVID-19 outbreak that was ultimately contained. *See COVID-19 Coronavirus*. There was one death as a result, and 401 inmates have recovered. *Id.* This persuades the court that FCI Allenwood Low has acted

appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See id.* As of April 22, 2022, 313,085 doses have been administered systemwide. *Id.* At Allenwood FCC, 590 staff and 2066 inmates were fully inoculated as of April 22, 2022. *Id.* Beall refused a COVID-19 vaccine on April 19, 2021 and refused a flu vaccine on November 19, 2021. Docket 172 at 18, 111, 137. This leads the court to conclude Beall is not overly concerned about protecting himself against serious illness.

Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of April 19, 2022, the BOP reported only 53 federal inmates have confirmed positive test results for COVID-19 nationwide. *See COVID-19 Coronavirus.* There are currently over 136,000 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Beall's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.    Age Category, Note 1(B)

Beall is 65 years old. *See Find an Inmate.* Under the First Step Act, the defendant must be (i) at least 65 years old; (ii) experiencing a serious deterioration in physical or mental health because of the aging process; and (iii)

has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. *See* USSG § 1B1.13, cmt. n.1(B). Beall is 65 years old, but he has not shown he is experiencing significant deterioration in his physical or mental health due to age, nor has he served 75% of his term of imprisonment as of the filing of his motion. *See* Docket 167 at 68, 186, 347; Docket 175 at 3. Therefore, Beall has failed to meet his burden under the age category, USSG § 1B1.13 Note 1(B).

    **B.**    **Family Circumstances Category, Note 1(C)**

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 1(C), the defendant must demonstrate one of the following: (1)"[t]he death or incapacitation of the caregiver of the defendant's minor . . . children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Beall informs the court that his 84-year-old mother is suffering from a variety of chronic health conditions, and it has become difficult for her to provide self-care. Docket 165; Docket 175 at 1. Even if the court were to consider that Beall's mother may be incapacitated for purposes of Note (1)(C), the family circumstances category specifically references care needed for minor children or spouse. *See* USSG § 1B1.13, comment. n.1(C). Though the court is not unsympathetic, Beall does not qualify for release under the family circumstances category.

    **D.**    **Catch-all Category, Note 1(D)**

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and

compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Even after considering Beall's health conditions, age, family circumstances, and the COVID-19 pandemic, the court is not convinced that "extraordinary and compelling reasons" exist to release him from custody early.

### III.    Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Beall pleaded guilty to conspiracy to distribute a controlled substance. Docket 78 at 2. On March 3, 2015, law enforcement received information from a confidential informant (CI) that the defendant was distributing large quantities of methamphetamine in Minnesota. Docket 107 ¶ 8. The CI completed various drug transactions on behalf of law enforcement. *Id.* ¶¶ 9-11. On two occasions, the CI reported to Beall's restaurant to purchase methamphetamine. *Id.* ¶¶ 10-11. Beall's brother, and codefendant, executed a transaction on behalf of Beall at the restaurant. *Id.* ¶ 11. Beall informed the CI that he was in need of methamphetamine customers. *Id.* ¶ 12. This prompted law enforcement to incorporate an undercover officer (UC) into the investigation. *Id.* Beall sold methamphetamine to the UC on various occasions and mentioned introducing the UC to his methamphetamine source in the future. *Id.* ¶¶ 12-15. At the conclusion of the investigation, approximately 414.8 grams of actual methamphetamine were attributed to the defendant. *Id.* ¶ 17.

The total offense level was calculated as 34 and Beall was in criminal history category VI. *Id.* ¶¶ 31, 40. Beall is categorized as a career offender due

to his two prior felony distribution convictions under USSG §4B1.1(b). *Id.* ¶ 28, 40. As a result, the United States pursued an increased punishment under 21 U.S.C. § 851(a). *Id.* ¶ 74; Docket 77; Docket 72 ¶ J. Beall's guideline range was 262 to 327 months in custody and faced a mandatory minimum of 240 months. Docket 107 at ¶ 72-73. The court sentenced Beall below his guideline range to the mandatory minimum of 240 months in custody and later reduced the sentence to 120 months in custody. Docket 114 at 2; Docket 160 at 2. After careful consideration, the court concludes Beall's sentence of 120 months continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Beall has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 165) is denied.

Dated April 22, 2022.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
